IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| TOMAS JESUS MORAIDA, JR. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No: 1:16-cv-423 |
| | § | |
| CITY OF BEAUMONT, | § | JURY DEMANDED |
| JEFFERSON COUNTY, TEXAS, | § | |
| OFFICER D.WILKERSON, SERGEANT | § | |
| BEAN, OFFICER LEGER, OFFICER K. | § | |
| BARNETT | § | |
| | | |
| Defendants | | |

## PLAINTIFF'S FIRST COMPLAINT

Tomas Jesus Moraida Jr. (hereinafter "Plaintiff" or " Mr. Moraida") files this Complaint complaining of the City of Beaumont (hereinafter "City"), Jefferson County, Texas (County), Officer D. Wilkerson, Sergeant Bean, Officer Leger, and Officer K. Barnett.[1]

## NATURE OF LAWSUIT

1.      This is a civil rights action brought under Title 42 U.S.C. Section 1983 (Section 1983).

## PARTIES

2.      This lawsuit arises from injuries suffered by Plaintiff Tomas Moraida Jr. ("Mr. Moraida").

---

[1] "City " or "City Defendants " refers collectively to defendant City of Beaumont and City employees sued in their official capacity. "Individual City Defendants " refers to all City employees sued in their individual capacities. "Officers" refers to City of Beaumont police officers in their individual and official capacities. "County" or "County Defendants" refers collectively to defendant Jefferson County, Texas, and County employees sued in their official capacity.

3.      Defendant City of Beaumont is a Texas municipality and may be served pursuant to Texas Civil Practice and Remedies Code 17.024(b) by personally serving City of Beaumont Clerk Tina Broussard at 801 Main Street #125, Beaumont, Texas 77701. **Please issue Citation and Serve.**

4.      Defendant Jefferson County is a Texas county and may be served by and through its county judge, the Honorable Jeff Branick, Jefferson County Courthouse, 1149 Pearl Street, Beaumont, Texas 77701. **Please issue Citation and Serve.**

5.      Defendant Officer D. Wilkerson is a City of Beaumont employee sued in his individual and official capacities, and may be served with process at 255 College Street, Beaumont, Texas 77701.

6.      Defendant Sergeant Bean is a City of Beaumont employee sued in his individual and official capacities, and may be served with process at 255 College Street, Beaumont, Texas 77701.

7.      Defendant Officer Leger is a City of Beaumont employee sued in his individual and official capacities, and may be served with process at 255 College Street, Beaumont, Texas 77701.

8.      Defendant Officer K. Barnett is a City of Beaumont employee sued in his individual and official capacities, and may be served with process at 255 College Street, Beaumont, Texas 77701.

9.      All Individual Defendants were, at all relevant times, acting under color of law.

## JURISDICTION & VENUE

10.     This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States.

11.     Venue is proper in this Court because all relevant acts and omissions giving rise to Plaintiff's claims occurred in Jefferson County, Texas and because Defendants are all located or may be found in Jefferson County.  *See* 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### A. Mr. Moraida's Arrest and Violent Restraint

12.     On June 27, 2016, Defendants arrived to Mr. Moraida's residence to arrest him for allegedly burglarizing a building. The officers ordered Mr. Moraida to keep his arms up and walk backwards to the sound of the arresting officer's voice, which Mr. Moraida did.  The officer then proceeded to use excessive force to arrest Mr. Moraida, causing him multiple injuries. While walking backwards to the sound of the officer's voice, with his hands up in the air, Mr. Moraida was forcibly pushed, from behind, to the concrete driveway and pinned face-down on the concrete.

13.     Once Mr. Moraida was pinned face-down on the concrete, the arresting officer, still kneeling on his back, successfully handcuffed Mr. Moraida securely behind his back, with no resistance from Mr. Moraida. Despite the officer successfully having restrained Mr. Moraida he continued to pin him face-down on his stomach, applying immense pressure to his body.

### B. The County and Its Officers Effectively Restrained Mr. Moraida and Ruthlessly Assaulted Him Despite Mr. Moraida's Lack of Resistance

14.     While restrained and still pinned face-down on the concrete, the arresting officer then proceeded to swing his arm and forcefully hit Mr. Moraida on the left side of his face with his closed fist. Despite knowing that their acts and omissions were causing Mr. Moraida severe physical pain, the Officers continued those actions disdainfully and with a complete disregard for Mr. Moraida's safety, medical needs, and constitutional rights. The officer broke Mr. Moraida's jaw during this attack. Mr. Moraida attempted to yell but was unable to due to excessive pain in

his jaw and limited mobility of the jaw.  He was only able to make noises rather than yell in pain.

Mr. Moraida indicated that he was in severe pain, however the officers disregarded Mr.

Moraida's concerns by repeatedly telling him to "shut up".   The arresting officer made no

adjustments and continued to apply pressure and kneel on top of him as he lay face-down on his

stomach.  The complete lack of objection by any officers indicates that the Officers' actions were

consistent with City culture, policies, and norms.

15.     The officers were instructed to call EMS who arrived to Mr. Moraida's residence to

examine his injuries. EMS technicians told Mr. Moraida and the officers that Mr. Moraida's jaw

was broken. The officers then transported Mr. Moraida to Baptist Hospital of Southeast Texas,

where it was confirmed that his jaw was in fact broken. As a result of the arresting officer's

excessive force against Mr. Moraida, Mr. Moraida suffered a mandible fracture, an elbow injury,

a right ramus and condyle fracture, and has lost feeling in two fingers on his left hand.

16.     After receiving confirmation from the hospital regarding the severity of Mr. Moraida's

injuries, the officers proceeded to take him to the jail.  Despite confirmation of a broken jaw, Mr.

Moraida did not receive any medical attention for the next eight days. He was required to eat the

standard food served in the jail, even with a broken jaw.  Finally, on July 5, 2016, Mr. Moraida

was taken to the jail infirmary.  However, it was not until July 11, 2016, two weeks after Officers

assaulted him that Mr. Moraida was operated on for the injuries he sustained during the arrest.

17.     As a result of the injuries caused to Mr. Moraida, he was required to have an open

reduction on the left side of his jaw and a closed reduction on the right side of his jaw to restore

the broken jaw.  These surgeries required a metal plate and four screws to be inserted into Mr.

Moraida's jaw.  For eight weeks, his mouth was required to be completely wired shut, forcing

him to survive on an all-liquid diet. Because of the injuries sustained, and the operations as a

result of the injuries, Mr. Moraida has lost nearly twenty pounds since the date of his arrest and continues to suffer from severe pain.   Mr. Moraida will continue to suffer from pain and complications from this injury for a long time, if not forever.

## CAUSES OF ACTION

*A.*     *Section 1983*

18.     Plaintiff incorporates paragraphs 1–17 in this section for all purposes as if fully restated herein.

i.   Violations of Federal Law

19.     Defendants violated Mr. Moraida's Fourteenth Amendment freedom over excessive use of force by a government actor. As a result of Defendants' objectively unreasonable use of force, Mr. Moraida suffered a mandible fracture, an elbow injury, a right ramus and condyle fracture, and has lost feeling in two fingers on his left hand. Defendants acted unreasonably and applied force that vastly exceeded their need when the officer shoved him down to the ground, used unreasonable force in putting the handcuffs on, and proceeded to hit Mr. Moraida with a closed fist on the left side of his face, despite Mr. Moraida being handcuffed and pinned face-down on concrete and posing no threat to the officers. Defendants' use of force was also objectively unreasonable because Mr. Moraida did not fight with the arresting officer, was not resisting or threatening to resist, and was vastly outnumbered by the armed Officers.

20.     Defendants also violated Mr. Moraida's right to substantive and procedural due process. First, Defendants had a duty to refrain from being deliberately indifferent to Mr. Moraida's serious medical needs—especially considering they caused Mr. Moraida's most serious medical needs.  Intentionally shirking their duty, Defendants hindered the ability of medical professionals to attend to Mr. Moraida's medical needs.  Defendants were well aware of Mr. Moraida's serious

medical needs indeed the serious injury to his jaw, but they consciously refused to act for at least a week after he sustained a broken jaw as a result of the brutal actions and excessive force from Defendants during his arrest.

21.      Additionally, Defendants created Mr. Moraida's serious medical conditions that caused his injuries by forcing him into a face-down position on concrete and hitting him with a closed fist in the face, even though Mr. Moraida was successfully restrained with mechanical restraints. Defendants intentionally assaulted Mr. Moraida despite any lack of threat to the officers and hindered medical professionals' ability to treat Mr. Moraida, by failing to seek appropriate medical treatment for Mr. Moraida's injuries for nearly two weeks.

      ii.  <u>Qualified Immunity Does Not Apply</u>

22.      Qualified immunity does not shield the Individual County or City Defendants from suit or liability.   As set forth above, the Individual County and City Defendants violated Mr. Moraida's federal rights.   Additionally, at the time the Individual County and City Defendants assaulted Mr. Moraida, and thereafter, it was clearly established that they had a duty to not be deliberately indifferent to the serious medical needs of a detainee such as Mr. Moraida. Additionally, the law clearly imposed a duty on state actors such as the Individual City Defendants to use a quantum and method of force that is reasonable under the circumstances. The law clearly prohibited the Individual City Defendants from using the quantum and method of force they used against Mr. Moraida in the circumstances described above.   The law clearly prohibited the Individual City and County Defendants from deliberately refusing to address Mr. Moraida's serious medical needs, especially when Defendants caused those medical needs. Accordingly, the Individual County and City Defendants' conduct was objectively unreasonable under the state of the law at that time.

23.     Additionally, the Individual County and City Defendants were aware that their acts and omissions violated clearly established constitutional duties.  However, the Individual County and City Defendants consciously disregarded their clearly-established duties because they intended to harm Mr. Moraida and because they were allowed to unlawfully inflict harm on detainees pursuant to the City and County's customs, policies, and practices.

24.     For these reasons, qualified immunity does not shield the Individual County or City Defendants from suit or liability.

       iii.  <u>Policy or Custom</u>

25.     The Beaumont City Chief of Police at all relevant times was Chief James Singletary.  Thus, Chief Singletary undisputedly was aware of the City's conduct in their treatment of Mr. Moraida.

26.     Further, Chief Singletary owed the duty to supervise, train, and direct the City police officers.  Chief Singletary could delegate this authority to City police officers.  For purposes of Plaintiffs' Section 1983 claims, Chief Singletary and his delegees, collectively or individually, constitute policymakers, who promulgated policies and procedures that encouraged Defendants to—or failed to discourage Defendants from—employing excessive and lethal force against arrestees, being deliberately indifferent to arrestees' serious medical needs, hindering medical assistance to arrestees in need of such assistance, and causing serious medical conditions and refusing or failing to remedy those conditions.

27.     The Jefferson County sheriff at all relevant times was Sheriff Mitch Woods.  Thus, Sheriff Woods undisputedly was aware of the County's conduct in their treatment of Mr. Moraida.

28.     Further, Sheriff Woods owed the duty to supervise, train, and direct the County jail officers and other staff.  Sheriff Garcia could delegate this authority to other County officials. For purposes of Plaintiffs' Section 1983 claims, Sheriff Woods and his delegees, collectively or individually, constitute policymakers, who promulgated policies and procedures that encouraged Defendants to—or failed to discourage Defendants from—being deliberately indifferent to pretrial detainees' serious medical needs, hindering medical assistance to pretrial detainees in need of such assistance, and causing serious medical conditions and refusing or failing to remedy those conditions.

29.     Alternatively, the failures referenced above represent persistent, widespread practices of which the policymakers were aware.  These City and County policies, practices, and customs are longstanding and they provided the moving force that caused Mr. Moraida's injuries.  Absent these policies, practices, and customs, Defendants would not have effectively and unnecessarily assaulted a restrained Mr. Moraida, despite his lack of resistance and refused to provide him appropriate medical treatment in a timely and reasonable manner.

30.     Mr. Moraida's injuries are the predictable result of the City and County Defendant's *de facto* policy that (1) assaulting restrained arrestees is acceptable; (2) denying detainees adequate medical attention; (3) denying detainees proper treatment for injuries in a timely and humanely manner; or (4) some combination thereof.  These policies reveal themselves in many ways, including without limitation inadequate policies, understaffing medical and jail staff, and failing to properly train City and County employees.  The City and County's policy is evidenced by, among other things, a pattern of acts or omissions that demonstrate an intended condition or practice, and the policy is not related to a legitimate goal of the County or City.  Accordingly, Mr. Moraida suffered and continues to suffer from severe injuries as a result.

31.     On information and belief, the Officers who caused or contributed to cause Mr. Moraida's injuries had previously exhibited a tendency to employ excessive force against arrestees and to ignore arrestees' serious medical needs.  The County, its sheriff. along with the City, and its Police Chief, during all relevant times, and their delegates knew of those tendencies and intentionally refused to prevent the resulting harm.

32.     The City and County's policies, customs, practices, and conditions described in this Complaint provided the moving force for and caused Mr. Moraida's injuries.

## DAMAGES

33.     Plaintiff incorporates paragraphs 1 – 32 here for all purposes as if fully restated herein.

34.     As a result of Defendants' acts and omissions set forth herein, Plaintiff suffered injuries and damages including without limitation the following:

     i.   Past and future physical pain and suffering and mental anguish;

    ii.   Past and future physical impairment; and

   iii.   Past and future medical bills.

## ATTORNEY'S FEES

35.     Plaintiff would show that he is entitled to recover reasonable and necessary attorney's fees incurred as a result of prosecuting these claims, pursuant to 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b).

## PUNITIVE DAMAGES

36.     As set forth above, Defendants' conduct demonstrated evil motive or intent; reckless or callous indifference to Mr. Moraida's federally-protected rights; a subjective consciousness of extreme risk of injury or illegality; a criminal indifference to civil obligations; subjective

recklessness; a violation of well-established precedent regarding treatment of detainees' gross negligence; or some combination thereof. Accordingly, Plaintiff is entitled to punitive damages.

## JURY DEMAND

37.    Plaintiff requests that this case by tried by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer herein and that upon final hearing they have judgment against Defendants for actual and punitive damages, for prejudgment and post-judgment interest, for costs of court and attorney's fees, and for all other relief, legal and equitable, to which they may be entitled.

Respectfully submitted,

JACOBS, O'HARA, MCMULLEN, P.C.

By: */s/ Ryan Nicole Jacobs*
Ryan Nicole Jacobs
State Bar No.: 24058147
Patrick O'Hara
State Bar No.: 24060353
Jacobs, O'Hara, McMullen, P.C.
14340 Torrey Chase Blvd., Suite 360
Houston, Texas 77014
Telephone: 281-919-2073
Facsimile: 713-583-0306
pjo@jomlawfirm.com
rnj@jomlawfirm.com